UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>LLS AMERICA, LLC,<br><br>                    Debtor,<br><br>BRUCE P. KRIEGMAN, solely in his capacity as court-appointed Chapter 11 Trustee for LLS America, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>ANGELA MIRROW, et al.,<br><br>                  Defendants. | NO: 2:14-CV-268-RMP<br><br>Bankr. Case No. 09-06194-FPC11<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT |

Before the Court is Plaintiff's Motion for Summary Judgment against Defendant Angela Mirrow. ECF No. 26. On December 18, 2014, the parties presented oral argument. Michael L. Loft appeared on behalf of Plaintiff.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT ~ 1

Defendant was represented by Gregg R. Smith.  The Court has considered the parties' arguments and all relevant filings.  The Court is fully informed.

BACKGROUND

This matter is an adversary proceeding within the bankruptcy of the LLS Companies ("Debtor"), an extensive Ponzi scheme.  Defendant's husband, Alex Mirrow, arranged for the investment of large sums of money in Debtor, both through his companies and by recruiting new lenders.  *See* 2:11-cv-00362-RMP, ECF No. 219 at 10-18.  Although the cases of Defendant and her husband originally were to be tried together, the parties stipulated to holding a separate trial for Defendant in light of her right to a trial by jury.  *See* 2:11-cv-00362-RMP, ECF No. 114.

On December 16, 2005, Alex Mirrow arranged for $200,000 to be loaned to Debtor from a line of credit that Weigh Station LLC held.  *See* ECF No. 28-2 at 23.  Defendant had no ownership interest in Weigh Station LLC, which was owned by her husband.  ECF No. 28-2 at 23.  However, at Alex Mirrow's request, Debtor issued an unsigned promissory note for the $200,000 loan in Defendant's name.  *See* ECF Nos. 28-4 at 116; 34-1.  Until this litigation began, Defendant was not aware that the December 2005 promissory note had been made in her name, nor did she know that on December 19, 2006, the note had been converted into a new

note in the name of Save It, LLC.  ECF Nos. 27 at 4; 33 at 3; *see also* ECF No. 28-7 at 143-44 (December 2006 promissory note).

In relation to the promissory note, Debtor sent the Mirrows post-dated checks payable to "A. Mirrow."  ECF No. 27 at 4.  At her husband's request, Defendant signed at least eleven of the checks, each of which was in the amount of $7,167.  ECF No. 33 at 2-3.  Debtor issued additional checks in various amounts payable to "A. Mirrow," some of which were signed by Alex Mirrow.  *See* ECF Nos. 28-3; 33 at 3-4.  Defendant asserts that the checks for amounts other than $7,167 were issued in consideration of other promissory notes or commissions owed to Alex Mirrow, not in relation to the 2005 promissory note.  ECF No. 31 at 7-8.  It is undisputed that all of the "A. Mirrow" checks at issue in this matter, totaling $139,256.29 USD, were deposited into the Mirrows' family bank accounts.  *See* ECF Nos. 27 at 5; 28-6 at 10.

Alex Mirrow filed a proof of claim in Debtor's bankruptcy but did not assert a right to credit for the December 2005 loan.  *See* ECF No. 28-8.  Alex Mirrow included the December 2005 loan, however, in the proof of claim that he filed on behalf of Save It, LLC.  *See* ECF No. 28-9 at 157.  Defendant did not file a proof of claim in Debtor's bankruptcy.  ECF No. 28 at 3-4.  In Alex Mirrow's case, the Court included the $200,000 December 2005 deposit in its calculation of the total

1  amount that Save It, LLC had invested in Debtor.  *See* ECF No. 28-6 at 3 *and* 2:11-
2  cv-00362-RMP, ECF No. 219 at 17.

3  Plaintiff seeks judgment against Defendant for $139,256, which is the
4  amount of payments and commissions that the Court found that Alex Mirrow
5  personally had received from Debtor, 2:11-cv-00362-RMP, ECF No. 219 at 18.
6  Defendant disputes this amount, claiming that the full amount that Plaintiff could
7  claw back would be $78,837, the proceeds that she claims that Debtor transferred
8  as payment for the December 2005 loan.  *See* ECF No. 31 at 7-8, 13.  Defendant
9  further contends that this figure should be subtracted from the $200,000 investment
10 made in December 2005, such that Defendant would be a net-negative investor.
11 *See* ECF No. 28-11 at 198.

## ANALYSIS

13 Plaintiff moves for summary judgment, asserting that the fact and amount of
14 the deposits is not in dispute and that Defendant cannot succeed under the defense
15 of good faith.  Defendant argues that multiple issues must be resolved by a jury.

16 *Summary Judgment Standard*

17 Summary judgment is appropriate when there is no genuine dispute as to any
18 material fact and the moving party is entitled to judgment as a matter of law.  Fed.
19 R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the
20 absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). The party asserting the existence of an issue of material fact must show "'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968)). The nonmoving party "may not rely on denials in the pleadings, but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

In deciding a motion for summary judgment, a court must construe the evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31.

*Indirect Benefit Rule*

The Court has held that Debtor was a Ponzi scheme and that transfers made from Debtor in furtherance of that scheme constitute actual fraud. *See* 2:11-cv-00357-RMP, ECF No. 92. However, a transferee of a fraudulent transfer may keep funds that it took for reasonably equivalent value and in good faith. *See* 11 U.S.C. § 548(c); RCW 19.40.081(a). As recipients of transfers that constitute actual fraud, the burden of proof in establishing the affirmative defense of good faith is on the transferees. *In re Agric. Research and Tech. Grp., Inc.*, 916 F.2d 528, 535

1  (9th Cir. 1990); 5 *Collier on Bankruptcy* ¶ 548.09[2][c] at 548-98.2 (16th ed.
2  2011).

3        The parties dispute whether Defendant may rely on the December 2005 loan
4  to Debtor as reasonably equivalent value for any transfers received from Debtor.
5  Defendant contends that the 2005 loan constitutes reasonably equivalent value
6  because of the indirect benefit rule.

7        The indirect benefit rule provides that "'reasonably equivalent value can
8  come from one other than the recipient of the payments . . . .'" *In re N. Merch.,*
9  *Inc.*, 371 F.3d 1056, 1058 (9th Cir. 2004) (quoting *In re Jeffrey Bigelow Design*
10 *Grp., Inc.*, 956 F.2d 479, 485 (4th Cir. 1992)); *see also Kreidler v. Cascade Nat.*
11 *Ins. Co.*, 179 Wn. App. 851, 862-63 (2014) (relying on the federal cases regarding
12 the indirect benefit rule when interpreting "reasonably equivalent value" under
13 state law). In *Northern Merchandise*, a debtor's shareholders borrowed money
14 from Frontier Bank after the bank had refused to loan the funds to the debtor. 371
15 F.3d at 1057. The bank understood that the debtor would use the funds for its
16 business operations and the bank even deposited the money directly into the
17 debtor's account. *Id.* On the same day that the shareholders entered into the loan,
18 the debtor granted Frontier Bank a security interest in its inventory and other
19 property. *Id.* at 1058.

20

The debtor in *Northern Merchandise* later ended its business and sold its inventory. *Id.* at 1058. Frontier Bank was repaid for the loan from the proceeds from the sale of the debtor's inventory. *Id.* A bankruptcy petition was filed, and the trustee contended that the money that the shareholders had borrowed technically was a capital contribution rather than a loan, such that the debtor was not obligated to grant Frontier Bank a security interest. *Id.* at 1059. The trustee argued that the debtor had not received reasonably equivalent value, supporting the trustee's assertion that the grant of a security interest and transfers to Frontier Bank to satisfy the loan were fraudulent. *See id.* at 1058.

The Ninth Circuit rejected the trustee's view as too formalistic. "Although Debtor was not a party to the . . . loan, it clearly received a benefit from that loan." *Id.* at 1059. The court explained that "the primary focus of Section 548 is on the net effect of the transaction on the debtor's estate and the funds available to the unsecured creditors." *Id.* Because the debtor received the same value from the loan as it transferred to Frontier Bank, its grant of a security interest "resulted in no net loss to Debtor's estate nor the funds available to the unsecured creditors." *See id.*

Here, Plaintiff argues that the indirect benefit rule does not apply. Plaintiff explains that the deposit already was attributed to Save It, LLC in Alex Mirrow's case; that the promissory note in Defendant's name was re-issued in the name of

Save It, LLC; and that the Court already has determined that Alex Mirrow and Save It, LLC did not meet the objective standard of good faith. ECF No. 26 at 7. Plaintiff also distinguishes *Northern Merchandise* because that case concerned a legitimate business debtor rather than a Ponzi scheme and because, unlike Defendant, Frontier Bank undisputedly had paid money that was received by the debtor.

The root of the disagreement between the parties appears to be that the "indirect benefit" in *Northern Merchandise* was a benefit conferred on the debtor, while here Defendant argues that *she* should benefit indirectly from the funds that Save It, LLC paid, by being allowed to rely on those funds as value given in exchange for the transfers that she received. *See* ECF Nos. 26 at 9; 31 at 12.

The Court finds that the proper inquiry is the net effect on Debtor's estate. The parties do not dispute that $200,000 was loaned to Debtor in December 2005 or that at least some of the transfers to Defendant were returns on that loan. Although Defendant did not personally fund the loan to Debtor, the effect on Debtor's estate is the same as if she had supplied the money. Furthermore, even though the December 2005 promissory note already was attributed to Save It, LLC, the transfers that Plaintiff seeks to avoid as to Defendant also were awarded already to Plaintiff against Alex Mirrow and Save It, LLC. *See* 2:11-cv-00362-RMP, ECF No. 219 at 18. Debtor's estate would receive a windfall if it benefitted

from the December 2005 loan and also were entitled, regardless of Defendant's objective good faith, to claw back the returns paid to Defendant on that loan.

The Court concludes that Debtor received value in exchange for the transfers made to Defendant. *See In re N. Merch., Inc.*, 371 F.3d at 1059 ("To hold otherwise would result in an unintended . . . windfall to Debtor's estate.").

*Collateral Estoppel*

Plaintiff also argues that Defendant is collaterally estopped from litigating the issue of good faith because of the findings of fact and conclusions of law entered in the case against her husband. ECF No. 26 at 10-14.

"Where a federal court has decided the earlier case, federal law controls the collateral estoppel analysis." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1096 (9th Cir. 2004). Collateral estoppel, also known as issue preclusion, is available when:

> (1) there was a full and fair opportunity to litigate the issue in the previous action;
>
> (2) the issue was actually litigated in that action;
>
> (3) the issue was lost as a result of a final judgment in that action; and
>
> (4) the person against whom collateral estoppel is asserted in the present action was a party or in privity with a party in the previous action.

*In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000).

"'Privity'—for the purposes of applying the doctrine of *res judicata*—is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *In re Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997) (quoting *Southwest Airlines Co. v. Texas Int'l Airlines, Inc.*, 546 F.2d 84, 94 (5th Cir. 1977)). *See also United States v. Bhatia*, 545 F.3d 757, 759 (9th Cir. 2008) (explaining that privity is an element of both res judicata and collateral estoppel). Familial relationship does not necessarily result in privity, although it is a factor in determining the preclusive effects of a prior judgment. *Trevino v. Gates*, 99 F.3d 911, 924 (9th Cir. 1996).

Plaintiff argues that Defendant is estopped from litigating the defense of good faith because she is in privity with Alex Mirrow, whom the Court previously determined had not established the defense. Plaintiff also contends that Defendant's case will rely on her assertion that Alex Mirrow handled all interactions with Debtor. Accordingly, Plaintiff explains that the trial will turn on the testimony of Alex Mirrow, which the Court already has considered. *See* ECF No. 26 at 12.

The Court finds that it would be improper to apply the doctrine of collateral estoppel against Defendant. It would be unfair to allow Plaintiff to use offensive collateral estoppel here, after Plaintiff stipulated to resolving the case against

Defendant in a separate jury trial. *See Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 234 (9th Cir. 1989) ("[I]t is inappropriate to apply collateral estoppel when its effect would be unfair.").

*Agency*

Plaintiff also alleges that there is no genuine issue for trial because Defendant's husband acted as her agent, such that Alex Mirrow's acts and knowledge are imputed to Defendant. ECF No. 26 at 14-18. Plaintiff relies on a case from Colorado, Defendant and Alex Mirrow's former state of residence, ECF No. 27 at 1-2. Although Defendant does not expressly dispute Plaintiff's reliance on Colorado law, Defendant's briefing regarding this issue discusses case law from California and Washington. *See* ECF No. 31 at 10-11. Because there is no apparent justification for applying California's law of agency, the Court turns to Colorado and Washington law. *See* 2:11-cv-00362-RMP, ECF No. 148 at 3-4 (Court's explanation that Debtor's relevant conduct largely occurred in Spokane, Washington).

There is little difference between the relevant laws of agency in Colorado and in Washington. Both states recognize that an agency relationship may arise implicitly through the conduct of two parties. *Moses v. Diocese of Colo.*, 863 P.2d 310, 324 (Colo. 1993); *Hewson Const., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 823 (1984). For example, an agency relationship may exist "when one party acts at the

instance of and, in some material degree, under the direction and control of another." *Hewson Const.*, 101 Wn.2d at 823; *see also Moses*, 863 P.2d at 324 ("An 'agent' is generally one who acts for, or in place of, another, or is entrusted with the business of another."). Both states also acknowledge that the existence of agency is a fact-specific determination. *See Moses*, 863 P.2d at 324 ("No one factor, including control, is determinative."); *Yong Tao v. Heng Bin Li*, 140 Wn. App. 825, 831 (2007). Washington and Colorado courts also generally impute the knowledge of an agent to his or her principal. *See Jehly v. Brown*, 327 P.3d 351, 354 (Colo. App. 2014); *Denaxas v. Sandstone Court of Bellevue, L.L.C.*, 148 Wn.2d 654, 665-66 (2003).

Defendant contends that there is a genuine issue regarding whether Alex Mirrow acted with his wife's "knowledge and acquiescence," relying on a Ninth Circuit decision applying California and Washington law. ECF No. 31 at 10-11 (discussing *In re Nelson*, 761 F.2d 1320, 1323 (9th Cir. 1985)). In *Nelson*, the Ninth Circuit explained that a spouse could act as the agent of another spouse and convey community real property. 761 F.2d at 1323. Referring to state case law, the court noted that a non-participating spouse's "knowledge of and acquiescence to" a conveyance would bind her to it and that a marital community would be estopped from denying liability in situations "when one spouse permits the other to conduct the transaction, both have a general knowledge of the transaction, and both

are ready to accept the benefits which may come from it." *Id.* (citing *Miller v. Johnston*, 75 Cal. Rptr. 699, 707 n.6 (1969); *Colorado Nat'l Bank of Denver v. Merlino*, 35 Wn. App. 610, 616 (1983)) (internal quotation marks omitted).

However, both of the state cases discussed in *Nelson* concern statutes that require both spouses to execute instruments that encumber community real property. *See Miller*, 270 Cal. Rptr. at 707 n.6; *Merlino*, 35 Wn. App. at 616. The cases do not stand for the broader proposition that one spouse may act as the agent for his or her spouse only if the principal spouse knows of and acquiesces to each transaction. *See, e.g.*, *Wallace v. Thomas*, 193 Wash. 582, 593 (1938) (finding that wife who attended to all community business was actual agent of marital community).

However, the Court nevertheless finds that a genuine dispute exists as to Alex Mirrow's agency for Defendant. Defendant was aware that her husband invested in a number of ventures, but the evidence in the record is insufficient to establish whether and to what extent Alex Mirrow acted as her agent. Defendant explained in her discovery responses that "[t]he decision to invest with Little Loan Shoppe was left to [her] husband Alex Mirrow," ECF No. 28-2 at 25, which tends to show that Defendant implicitly consented to allowing Alex Mirrow to act as her agent. However, in the same document Defendant responded that the $200,000 investment "was actually purchased by Weigh Station, LLC a business owned by

my husband, not me." ECF No. 28-2 at 23.  Thus, the extent of Alex Mirrow's authority to act as Defendant's agent while dealing with Debtor, if any such authority existed, is not certain from the record.

Plaintiff relies on Colorado law for the rule that "[t]he agency of one spouse to act for the other may be established by the circumstances without proof of an express authorization, and may be proved by less convincing evidence than would be required to establish such agency between strangers." *Broomhall v. Edgemont Min. Co.*, 139 Colo. 496, 502 (1959).  However, the decision that an agency existed in *Broomhall* was made after evidence was revealed at trial that allowed the court to conclude "that in all matters involved the acts of the husband were the acts of the wife." *Id.* at 498, 502.  As noted above, the current facts in the record do not permit the Court to determine whether Alex Mirrow acted as Defendant's agent.

*Amount of Transfers that Defendant Received*

Defendant contends that a genuine dispute exists regarding the amount of transfers that she received from Debtor. Defendant concedes that she signed a series of the checks payable to "A. Mirrow" but implies that she should not be held liable for repayment of transfers received by checks that she did not sign and that relate to her husband's other promissory notes and commission payments from Debtor. *See* ECF No. 31 at 7-8.

However, the extent of Defendant's involvement in procuring the money is irrelevant to the calculation of transfers that she received. It is undisputed that, in their family bank accounts, Defendant and Alex Mirrow received $139,256.29 USD. *See* ECF No. 28-6 at 10.

In sum, the Court finds that Debtor was given value in exchange for transfers that Defendant received and that Defendant is not collaterally estopped from disputing good faith. A genuine issue of material fact exists as to whether Alex Mirrow acted as Defendant's agent while dealing with Debtor. However, Defendant failed to raise a genuine dispute of material fact regarding the amount of transfers that she received from Debtor, which the Court finds to be $139,256.29 USD.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, **ECF No. 26**, is **GRANTED IN PART AND DENIED IN PART**.

The Clerk's Office is directed to enter this Order and provide copies to counsel and pro se defendants.

**DATED** this 10th day of February 2015.

       *s/ Rosanna Malouf Peterson*
       ROSANNA MALOUF PETERSON
       Chief United States District Court Judge