UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In Re:<br><br>LLS AMERICA, LLC,<br><br>　　　　　　　　　　Debtor,<br>―――――――――――――――――<br>BRUCE P. KRIEGMAN, solely in his capacity as court-appointed Chapter 11 Trustee for LLS America, LLC,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>ANGELA MIRROW, et al.,<br><br>　　　　　　　　　　Defendants. | NO:  2:14-CV-268-RMP<br><br>Bankr. Case No. 09-06194-FPC11<br><br>FINDINGS OF FACT AND CONCLUSIONS OF LAW |

This action was tried before the Court on May 11, 2015.  Plaintiff, Bruce P. Kriegman, the court-appointed Chapter 11 Trustee for LLS America, LLC ("Trustee"), was represented by Shelley N. Ripley of Witherspoon Kelley.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 1

All Defendants are pro se litigants. In accordance with the Pretrial Order, the Court permitted the Trustee to file witness affidavits in lieu of testimony. *See* ECF No. 69 at 2. Defendants did not appear for trial, either telephonically or in person.

Ms. Ripley stated that Defendant Richard B. Jordan appeared on the Court's docket as a defendant at the time of trial, although the Trustee would not proceed against Mr. Jordan at trial because he had settled with the Trustee. Defendants Connie Konsulis, Shanna Bowolin, and Matthew Bowolin were the only remaining defendants.

Having reviewed the witness affidavits and admitted exhibits, the Court makes the following findings of fact and conclusions of law:

**PREVIOUS RULINGS**

**1.    Ponzi Scheme and Insolvency**

On July 1, 2013, the Bankruptcy Court issued its Report and Recommendation Re Plaintiff's Motion for Partial Summary Judgment on Common Issues ("Report and Recommendation") recommending that the District Court grant the Trustee's Amended Motion for Partial Summary Judgment on two "Common Issues": (1) Debtor operated a Ponzi scheme; and (2) Debtor was insolvent at the time of its transfers to Defendants. On August 19, 2013, this Court adopted the Bankruptcy Court's Report and Recommendation and entered

an order granting the Trustee's Amended Motion for Partial Summary Judgment on the Common Issues ("Order Adopting Report and Recommendation"). *See* 2:11-cv-00357-RMP, ECF No. 92. Therefore, this Court has determined that Debtor operated a Ponzi scheme and was insolvent at the time of each of the transfers to Defendants.

All of the findings and conclusions set forth in the Report and Recommendation and the Order Adopting Report and Recommendation are incorporated by this reference and are the law of this case.

**2.    Omnibus Hearing for the Testimony of Charles B. Hall**

The court-appointed examiner, Charles B. Hall, testified at an Omnibus Hearing in open court commencing on February 25, 2014. *See* 2:13-cv-00417-RMP, ECF Nos. 39, 40.[1] His testimony consists of written direct examination testimony that was filed on or about February 17, 2014, and the oral testimony that he gave at the Omnibus Hearing. Mr. Hall was cross examined by several defense attorneys and by some pro se defendants. Mr. Hall's testimony at the Omnibus Hearing is part of the record in this adversary action.

---

[1] Defendants were transferred from cause number 2:13-cv-00417-RMP to their current cause number on November 11, 2014. 2:13-cv-00417-RMP, ECF No. 84.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 3

**FINDINGS OF FACT**

1. Debtor is the Little Loan Shoppe group of companies, which was formed originally in 1997. PO-1 at 11.

2. Debtor operated a Ponzi scheme, whereby investors' loans sometimes were used to pay other investors' promised returns on investments. PO-1 at 16.

3. Over the course of its existence, Debtor acquired approximately $135.4 million from investments made by individual lenders, usually documented by promissory notes offering interest returns in the range of 40% to 60% per annum. PO-1 at 7 n.2, 15.

4. Debtor accumulated payday loan bad debts of approximately $29 million, which were written off in 2009. PO-1 at 41.

5. Debtor was never profitable at any time during its existence and at no time did it generate sufficient profits to pay the amounts due the lenders. PO-1 at 16, 53.

6. Defendants are lenders who received payments from Debtor.

7. Defendants filed proofs of claim, P-11 (Bowolins' proof of claim); P-41 (Konsulis's proof of claim), and the relevant conduct largely occurred in Spokane, Washington.

8. The Bowolins' promissory notes were executed in Spokane. P-11 at 3, 5.

9.  Debtor gave lenders, including Defendants, post-dated checks to cover interest payments, but some checks had insufficient funds to cover payment of the checks or no longer had an active account with the drawee bank when the date for payment arrived. *See, e.g.*, P-15; P-46 at 14.

10. Debtor voided approximately 29,000 of the post-dated checks that it had issued to lenders. PO-1 at 26.

11. The Bowolins received a promissory note that was rolled into or renewed in another promissory note. P-11 at 3.

12. All of the transfers that the Trustee seeks to avoid were made within the period of September 1997 to July 21, 2009. P-13; P-43.

13. Indicia and characteristics of the Ponzi scheme present in this case include:

    a.  Proceeds received from new investors masked as profits from running a payday loan business; PO-1 at 16, 22;

    b.  Promise of a high rate of return, usually between 40% to as much as 60%, on the invested funds; PO-1 at 19;

    c.  Debtor paid commissions to third parties who solicited new lenders, typically 10% of the amount received from the new lender; PO-1 at 20-21;

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 5

   d. Debtor solicited funds as loans evidenced by a promissory note but demonstrated a pattern of "rolling over" the promissory notes when due into new notes instead of paying off the obligation; PO-1 at 26;

   e. Debtor, throughout its history, made false and misleading statements to current and potential lenders; PO-1 at 53-54; and,

   f. Debtor was insolvent from its inception to the filing of its bankruptcy; PO-1 at 67.

 14. The court-appointed examiner, Charles B. Hall, by way of education, experience, and vocation, is qualified to analyze and review the legitimacy of an enterprise's operation and to detect a fraud based on Ponzi scheme operations.

 15. Mr. Hall's testimony is credible.

 16. Curtis Frye's written testimony, which pertained to Debtor's record keeping and the accounting of investment, payments, and consulting fees/commissions to Defendants, is credible.

 17. Defendants are "net winners."

 18. Defendants were promised high rates of return from Debtor.

 19. Defendants offered no evidence or argument in support of the defense of good faith. Moreover, the Court's review of Plaintiff's evidence against Defendants does not support by a preponderance of the evidence that these Defendants met the objective standard of good faith.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 6

20. The following summarizes the evidence of investments made by Matthew and Shanna Bowolin and the payments that they received:

| | |
|---|---|
| Total Payments (Money Out): | $34,601.37 CAD |
| Total Investments (Money In): | $25,000.00 CAD |
| MIMO (Difference between Money In and Money Out): | $9,601.37 CAD |

21. The following summarizes the evidence of investments made by Connie Konsulis and the payments that she received:

| | |
|---|---|
| Total Payments (Money Out): | $25,003.57 USD |
| Total Investments (Money In): | $10,000.00 USD |
| MIMO (Difference between Money In and Money Out): | $15,003.57 USD |

22. Total transfers to Defendants are as follows:

- Matthew and Shanna Bowolin for $34,601.37 CAD;

- Connie Konsulis for $25,003.57 USD;

23. All transfers to Defendants were made with actual fraudulent intent and in furtherance of a Ponzi scheme.

24. Defendants filed proofs of claim as follows:

- Matthew and Shanna Bowolin – Claim No. 417

- Connie Konsulis – Claim No. 84

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 7

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of this proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(d).

2. This Court has jurisdiction over Defendants.

3. This action was timely commenced.

4. Washington state law governing fraudulent transfers applies.

5. Transfers made in furtherance of a Ponzi scheme constitute actual fraud under the Bankruptcy Code and Washington's version of the Uniform Fraudulent Transfer Act (UFTA). *See* Bankr. Adv. Doc. 11-80299, ECF No. 378 at 21-25. "Where causes of action are brought under the UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers . . . ." *Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008).

6. A transferee of a fraudulent transfer may keep funds that it took for reasonably equivalent value and in good faith. *See* 11 U.S.C. § 548(c); RCW 19.40.081(a). As recipients of transfers that constitute actual fraud, the burden of proof in establishing the affirmative defense of good faith is on Defendants. *In re Agric. Research and Tech. Grp., Inc.*, 916 F.2d 528, 535 (9th Cir. 1990); 5 *Collier on Bankruptcy* ¶ 548.09[2][c] at 548-98.2 (16th ed. 2011).

7. Although "good faith" is not defined precisely in case law, at least one court has noted that the absence of good faith is shown by a transferee who knows that a debtor is operating a Ponzi scheme. *See In re Agric. Research*, 916 F.2d at 535 (citing *In re Indep. Clearing House*, 77 B.R. 843, 861 (D. Utah 1987)). The Ninth Circuit has quoted favorably an explanation in an early case that a transferee's "knowledge or actual notice of circumstances sufficient to put him, as a prudent man, upon inquiry as to whether his brother intended to delay or defraud his creditors . . . should be deemed to have notice . . . as would invalidate the sale as to him." *Id.* (quoting *Shauer v. Alterton*, 151 U.S. 607, 621 (1894)).

8. Thus, courts measure good faith by an objective standard, looking to what a transferee "'knew or should have known' in questions of good faith, rather than examining what the transferee actually knew from a subjective standpoint." *Id.* at 536.

9. The goal of avoiding a debtor's fraudulent transactions is not to punish those who received funds from the debtor. Instead, fraudulent transfers are avoided to benefit a debtor's creditors by bringing property back into the debtor's estate for distribution to creditors. *See* 5 *Collier on Bankruptcy* ¶ 548.01[1][a] at 548-11.

10. Under the Bankruptcy Code, Washington's UFTA, as well as relevant case law, the Court does not contemplate a recipient's intent when

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 9

deciding whether to avoid fraudulent transfers. *Id.* ¶ 548.04[2] at 548-63; *Thompson v. Hanson*, 168 Wn.2d 738, 749 (2010). Accordingly, a transfer that constitutes actual fraud is avoided in its entirety unless the transferee establishes that a reasonable person in the transferee's position would not and should not have known of the fraud, not simply whether he or she *actually* acted in good faith.

11. At least one unsecured creditor existed who triggered the strong arm power of 11 U.S.C. § 544(b)(1) because the creditor did not and should not reasonably have discovered the fraudulent nature of Debtor's Ponzi scheme transfers less than one year before the bankruptcy petition was filed.

12. Under the statutes relating to fraudulent transfers, 11 U.S.C. § 548 and RCW 19.40, *et seq.*, payments received from Debtor are recoverable from each Defendant by the Trustee, subject to the defense of good faith pursuant to 11 U.S.C. § 548(c) and RCW 19.40.081(a).

13. Transfers made by Debtor in furtherance of its Ponzi scheme are transfers made with intent to hinder, delay and/or defraud creditors under both state law, RCW Ch. 19.40, and federal law, 11 U.S.C. § 548(a)(1).

14. All transfers to Defendants were made with actual fraudulent intent and in furtherance of a Ponzi scheme.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 10

15. As discussed above, Defendants failed to meet their burden to establish good faith and, thus, Defendants are required to return the entire amount of the transfers that they received, including principal and interest.

16. The Trustee is entitled to pre-judgment interest at the applicable federal rate from July 21, 2009, when the bankruptcy case commenced.

17. Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Matthew and Shanna Bowolin for $34,601.37 CAD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

18. Pursuant to 11 U.S.C. § 548(a), 544, 550 and 551 and RCW 19.40.041(1) and 19.40.071, the Trustee is entitled to and is granted a judgment for the benefit of the Liquidating Trust of Debtor against **Connie Konsulis for $25,003.57 USD**, plus pre-judgment interest from July 21, 2009, at the applicable federal judgment rate and post-judgment interest at the federal judgment rate from the date of judgment to the date the judgment is paid in full, *see* 28 U.S.C. § 1961.

19. The Trustee is entitled to reimbursement of his costs for pursuing this action.

FINDINGS OF FACT AND CONCLUSIONS OF LAW ~ 11

20. All proofs of claim filed by any of Defendants in Debtor's Bankruptcy proceedings or any claims that may hereafter arise are hereby disallowed pursuant to 11 U.S.C. § 502(d) unless and until the avoided transfers are returned to the Trustee.

21. Trustee is awarded all applicable interest, costs and disbursements of this action against each Defendant.

**IT IS SO ORDERED**.

The District Court Executive is directed to enter this Order and provide copies to counsel and to Defendants, who are pro se.

**DATED** this 17th day of July 2015.

                                        *s/ Rosanna Malouf Peterson*
                                        ROSANNA MALOUF PETERSON
                                        Chief United States District Court Judge